C. Ledyard Blair v. Commissioner.
Blair v. Commissioner
Docket No. 6304.
United States Tax Court
1946 Tax Ct. Memo LEXIS 98; 5 T.C.M. (CCH) 736; T.C.M. (RIA) 46206; August 20, 1946
*98 Charles A. Davey, Esq., for the petitioner. J. O. Kramer, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: By this proceeding petitioner seeks a redetermination of a deficiency in income tax of $20,170.62 for the year 1941. The primary issue remaining for our disposition is whether a deductible loss occurred in 1941 with respect to certain unimproved real property owned by petitioner. Other items were conceded by the petitioner prior to final submission of the case. A stipulation of facts filed by the parties was supplemented by exhibits introduced at the hearing. The stipulated facts are hereby found accordingly; other facts appearing from the following recital are from the exhibits or are ultimate facts found by us from the record. [The Facts] Petitioner, an individual, filed his income tax return for the year 1941 with the collector of internal revenue for the fifth district of New Jersey. In 1941 he owned a parcel of real property located in Bar Harbor, Maine, which, together with certain buildings thereon, had been owned by D. Clinton Blair until the date of his death, June 3, 1915. By his will D. Clinton Blair devised one-sixth of *99 his property to petitioner in payment for services rendered and left his residuary estate to petitioner and John Insley Blair in equal shares. By agreement made in 1916, John Insley Blair and petitioner agreed to divide certain parcels of real estate, jointly owned by them, in the proportions of five-twelfths and seven-twelfths, respectively. For the purpose of this agreement the fair market value of the real property at Bar Harbor, together with the buildings thereon, was fixed at $119,022.67. John Insley Blair conveyed his five-twelfths interest in the Bar Harbor property to petitioner and was credited therefor with the sum of $49,592.78. The land and buildings comprising the property at Bar Harbor, were appraised for purposes of the inheritance tax of the State of Maine, at the time of the death of D. Clinton Blair, on June 3, 1915, as follows: Lot No. 1
$30,000.00
Cottage and Laundry thereon
25,800.00
Lot No. 2
4,600.00
Stable
5,100.00
Greenhouse
3,000.00
Gardener's Cottage
1,500.00
Total
$70,000.00
The real property was assessed for purpose of the real estate tax of the Town of Bar Harbor, Maine for the years 1915-1916 as follows: Land
$25,995.00
Buildings
37,100.00
Total
$63,095.00
*100 And for the year 1917, as follows: Land
$26,715.00
Buildings
39,100.00
Total
$65,815.00
In 1916 the property was rented for a period of three months, for a rental of $6,000. In 1927 a portion of the property was rented for a three-month period, for a rental of $850. The property has never been occupied nor used as a residence by the heirs or legatees of D. Clinton Blair since his death on June 3, 1915. Neither petitioner nor his family have occupied or used this property as a residence since that date. The property was listed by petitioner for sale or rent from 1916 until November 12, 1941. Petitioner paid all real estate taxes accruing on the property for all years up to and including 1938. In 1935 the buildings on the property were demolished by order of petitioner. Petitioner did not take any deduction on account of the demolition in computing his net income for 1935 subject to Federal income tax and no deduction therefor has been allowed to him for 1935 or any subsequent year. In 1941 proceedings were brought by the Collector of Taxes for the Town of Bar Harbor to sell the property at public auction for the unpaid real estate tax for the year 1939 *101 in the amount of $474.70. By letter dated July 24, 1941, petitioner advised the attorney for the Collector of Taxes for the Town of Bar Harbor that he would not pay any further real estate taxes. He stated that since his father's death in 1915 he had paid about $40,000 in taxes on the property and had never received an offer for it, which "led to inevitable conclusion that it is a liability, rather than an asset." The letter also stated: * * * I was also informed when I visited Bar Harbor last year that regardless of the price at which this property is sold, the taxes, as at present assessed, will not be reduced to that figure. I believe I am entitled to a deduction from my national taxes, owing to this loss, and my only thought in writing you was to ascertain whether the property would be sold this year or not, as it has a distinct bearing on my actions in this connection, so I would appreciate it very much if you will let me know what action is going to be taken, and when. On November 12, 1941, the property was sold to the Sheriff at public auction and no other bidders appearing, the Town of Bar Harbor purchased the property for $585.91, the amount of real estate tax unpaid *102 for 1939, plus interest and other costs, of $111.21. By letter dated November 17, 1941, petitioner expressed his intention not to exercise any right he might have under the laws of the State of Maine to redeem the property after it was sold for unpaid taxes. Under the laws of the State of Maine, property sold for taxes may be redeemed by payment of the taxes, interest and costs within the period of redemption, which is one year. The letter of November 17, 1941, stated in part: * * * To a layman like myself it is difficult to understand why a property has to be put up at auction three times, which I understand from you is the case. Of course, I have no thought of redeeming it, and I cannot imagine that I am at liberty to dispose of any of this acreage and hold the proceeds, which I imagine would have to go to the town in payment of taxes. Petitioner did not redeem the property. In 1941, petitioner's net worth was over $1,000,000 and he was financially able, if he chose, to pay all the real estate taxes assessed against the property. On June 18, 1942, petitioner wrote the Collector at Bar Harbor, again reciting his retention of the property some 27 years without receiving *103 a bid for its purchase and stating that he had heretofore advised that he "was through." He suggested that the notice which he was acknowledging of a further proceeding with reference to taxes constituted "red tape necessary under the laws" of Maine and he offered to expedite matters by executing a formal relinquishment of all his interest in the property. A reply from the Bar Harbor Collector of Taxes dated June 22, 1942, confirmed petitioner's assumption that the additional notice was "red tape." A letter to petitioner dated July 13, 1942, from the attorney for the Town of Bar Harbor transmitted for signature a deed of the property to the town pursuant to the petitioner's suggestion. By letter dated July 17, 1942, to the attorney, petitioner enclosed the executed deed, a quit claim to the inhabitants of Bar Harbor, dated July 17, 1942, stating that he was "very glad to have the opportunity to close this matter up and save the town further inconvenience and costs." The letter further stated: * * * I have of course sustained a very severe and genuine loss in this connection, on which I have claimed a deduction on my national taxes for 1941. May I express the hope that should *104 the Town of Bar Habor be brought into the matter in any way that nothing will be done to retard my efforts. [Opinion] The real property in question did not become worthless in 1941 and petitioner did not abandon it in that year. While the occurrence of worthlessness may be a ground for deductibility as a loss, even in the case of real property, , affirmed (C.C.A., 4th Cir.), ; ; and it may even be possible to regard an unmistakable abandonment as the identifiable event signalizing the loss, see , the present record discloses neither the one nor the other. Unlike the situation in the Gordon case, no evidence was produced as to the actual contemporary value of the property, and we have no way of comparing this with the unpaid tax liens standing against it. If petitioner's decision to discontinue the practice of paying taxes on the property is to be considered as the operative evidence of worthlessness, the year in which the loss occurred was not the one before us, but 1939. If, on the other hand, *105 it is contended that the worthlessness appears from petitioner's attitude towards the tax sale and his failure, even though financially able, to head it off by paying the arrears, see , the fact remains that petitioner continued to possess a right of redemption under the state law, and that only by waiting until the following year when petitioner's right of redemption would have expired is it possible, except in retrospect, to discover what his attitude toward the property really was. See , affirmed (C.C.A., 5th Cir.), ; . On the question of abandonment, the record is even less persuasive. Petitioner, it is true, expressed to the taxing authorities his intention not to redeem the property. But it was not until the following year, when he delivered a quit claim deed, that anything definitive or conclusive occurred. If there were here evidence sufficient to satisfy us that the property was worthless as in ; cf. , *106 the necessity for more convincing proof of abandonment might be less overwhelming. But neither in a practical nor a legal sense was this petitioner committed to any relinquishment of title or possession during the present tax year. It would not be realistic, but the reverse, to say that petitioner had by the mere expression of his state of mind taken any action which could be construed as an actual abandonment. In the absence of this, or of a conclusion that the property became worthless, only the completion of the tax sale in the following year would justify the deduction. ; . Respondent's determination must be sustained. Decision will be entered for the respondent.